UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAVID LANDRY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-2092** |
| **LAFOURCHE PARISH DETENTION CENTER, LAFOURCHE PARISH SHERIFF CRAIG WEBRE, LAFOURCHE PARISH SHERIFF'S OFFICE AS OPERATOR OF THE JAIL, DR. CALDWELL, & CELESTE ANDRAS, R.N.** | **SECTION "B"(4)** |

## ORDER AND REASONS

Before the Court are the **Motion to Compel (Rec. Doc. No. 19)** and the **Motion to Deem Requests for Admission Admitted (Rec. Doc. No. 20)** filed by the defendants, Dr. Larry Caldwell and Celeste Andras, R.N., seeking to compel the *pro se* plaintiff, David Landry, to respond to the interrogatories, requests for production of documents, and requests for admissions propounded to him by certified mail on October 25, 2013. The matter was noticed for submission on January 8, 2014, and the plaintiff has not filed an opposition.

### I.   Factual Background

#### A.   The Complaint

The plaintiff, David Landry ("Landry"), was an inmate housed in the Elayn Hunt Correctional Center ("Hunt") at the time of the filing of this *pro se* and *in forma pauperis* complaint

pursuant to 42 U.S.C. § 1983.[1]  He has since been released from prison.[2]  Landry brought the suit against the Lafourche Parish Detention Center, Lafourche Parish Sheriff Craig Webre, the Lafourche Parish Sheriff's Department as operator of the jail, Dr. Larry Caldwell, and Celeste Andras, R.N., complaining about the medical care provided to him at the Lafourche Parish Detention Center.

Under the broad reading afforded *pro se* petitions,[3] Landry alleged in his complaint that the surgery he had on May 4, 2012, was unable to properly heal as a direct result of the defendants' medical neglect, lack of timely treatment, improper living conditions and overall indifference to his medical needs.  He further claimed that he had to have two additional surgeries to correct the damage cause by the defendants' actions or inactions.  He claimed that the named defendants acted against the direct orders given by the surgeons which prolonged his condition and caused unnecessary pain and suffering.  He alleged that, in the nine months he was in the Lafourche Parish Detention Center, he suffered with severe physical and mental pain as a result of the defendants' deliberate indifference to his medical needs.  As relief, Landry seeks monetary damages and any other relief the Court deems appropriate.

### B.     The *Spears* Hearing

On October 11, 2012, the Court conducted a hearing pursuant to *Spears v. McCotter*,[4] and its progeny, with the plaintiff and counsel for the defendants participating by conference telephone

---

[1]Rec. Doc. No. 1-2, p. 4.  Landry filed the complaint in the 17th Judicial District Court for Lafourche Parish, State of Louisiana.  The defendants removed the case to this federal district court.  Rec. Doc. No. 1.

[2]Rec. Doc. No. 9.

[3]Pro se civil rights complaints must be broadly construed.  *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

[4]766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what the plaintiff is alleging and the legal basis for the claims.  The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

2

call.[5] Landry testified that he was in a motorcycle accident on May 4, 2011, which resulted in his arrest on a drunk driving charge. Landry stated that he injured seven vertebrae in his back and both hips. He also broke his left femur and several ribs. He remained in University Hospital where he underwent surgery to repair his left femur and hip with a rod, pins and screws. He was eventually taken into custody at the Lafourche Parish Detention Center on June 9, 2011.

He stated that he told officials at the jail about his injuries and the surgery. He further states that his mother brought his medical records and follow-up visits information to the jail. Landry indicated that he felt the prison officials simply did not care about the information.

In spite of this and the information they had, he was not taken for a follow-up appointment on the surgery until four months later. He stated that from the time of his arrival, he requested medical attention and appointment information almost daily. He claims that the hospital orders indicated that he was to have no weight bearing on his left leg and he was to receive physical therapy. However, initially, he was not provided with any physical assistance or a wheelchair to use until two months after he finally saw Dr. Caldwell. He stated that he instead was placed in a cell with three other inmates, and was made to walk to the bars to show identification when the prison staff knew he could not walk. He otherwise spent most of the time in bed or hobbling on one foot. He sometimes relied on help from other inmates. Landry further indicated that the biggest difficulty was getting to and using the showers. Landry testified that as a result of the failure to provide him with follow-up care, physical therapy, or a wheelchair for two months, the healing process was "messed up."

---

[5]Rec. Doc. No. 7. The plaintiff was sworn prior to testifying. The hearing was digitally recorded.

Landry testified that Nurse Andras replied to his requests for care and information and repeatedly wrote that he was scheduled to see the prison doctor, Dr. Caldwell, and that she would check on his follow-up appointments. She otherwise did not provide him any medical care. He instead was spoken to by her and Dr. Caldwell "like an idiot" and as if he was seeking sympathy. He stated that, when he was finally allowed to see Dr. Caldwell over one month after arriving at the jail, the Doctor was very condescending and gave him incorrect medical advice.

Landry testified that Dr. Caldwell's advice was that he needed to start walking around on his leg and did not need a wheelchair or assistance. Landry stated that Dr. Caldwell instructed him this way without reviewing the medical information or conducting a CT scan, MRI or x-rays. He recalled that Dr. Caldwell did not examine him and instead checked his blood pressure and asked him a few questions. He further claimed that Dr. Caldwell did not have him sent for the scheduled follow-up appointment and x-rays ordered by the hospital and instead thought Landry was seeking sympathy.

He conceded that about two months after he saw Dr. Caldwell, he was allowed to get a wheelchair after he filed grievances through the administrative remedy process and sought legal help in the matter. He complained, however, that the healing process had already been curtailed.

In that regard, he stated that, four months after his arrival, he was taken to see the orthopedist at University Hospital on October 6, 2011. He recalled that the hospital doctor was concerned about the lack of progress and healing and shocked by the condition of the hardware placed during the first surgery. Landry said that the doctor told him that 98% of his patients are walking within six months after the surgery when they have received proper follow-up care. Landry claimed that the neglect by the medical personnel at the prison delayed his recovery and actually caused him to have two more surgical procedures.

He stated that, at the October 6, 2011 visit, the hospital doctor found that a screw was out in his femur and pins were out of place in his hip. The doctor removed a broken screw from his left leg and did pre-operative blood work to prepare him for a third surgery to remove the rod and redo the surgery on his hip. He testified that he was supposed to return in three weeks for the third surgery, but the prison did not take him back. Landry stated instead, he did not see a doctor again until after he was transferred to Hunt. He recalled that he was transferred to Hunt sometime after he received his sentence on January 24, 2012. After he got to Hunt, the final surgery was done on May 1 or 4, 2012 at University Hospital.

Landry testified that, during this third surgery, the doctors removed the rod from his left femur and it was replaced with a clamp and plate. Landry stated that after that surgery, the prison officials at Hunt immediately began physical therapy at the prison. By the end of June 2012, he was out of the wheelchair and walking with crutches, although he still needed physical therapy. He stated that he also saw a doctor for evaluation of his progress about once a week. He also returned to University Hospital for CTscan and was x-rayed at Hunt to evaluate the healing.

In addition to the foregoing, Landry testified that, while he was in the Lafourche Parish Detention Center, his mother contacted a lady at the Lafourche Parish Sheriff's Office who was reportedly the supervisor over the medical department. He stated that his mother told her about the lack of care he was receiving. As a result, he named Sheriff Webre as a defendant because he was the supervisory official over the jail and the unidentified lady on his staff was notified about his medical needs and still nothing was done. He also included the Sheriff's Department and the Lafourche Parish Detention Center as defendants because he was not sure who was responsible for running the jail and included these entities to be thorough.

In connection with the *Spears* Hearing, the Court instructed the plaintiff to provide a copy of the discharge instructions he received from the hospital after the surgery in May 2011. The Court has reviewed a copy of the first page of the discharge instructions which was obtained from correspondence received by the Clerk of Court.[6] The Court also directed the defendants to provide the Court with a copy Landry's prison medical records from Lafourche Parish Detention Center. Those documents were received by the Court on October 19, 2011, and have been maintained in Chambers.

Upon the recommendation of the undersigned Magistrate Judge, the District Judge has dismissed Landry's claims against Sheriff Webre, the Lafourche Parish Sheriff's Department, the Lafourche Parish Detention Center and certain state law negligence/malpractice claims against Dr. Caldwell and Nurse Andras.[7] Remaining before the Court are Landry's claims of intentional medical indifference against Dr. Caldwell and Nurse Andras.

## II.     **Defendants' Arguments in Support of the Motions**

In their first motion, the defendants move for an order to compel the plaintiff to respond to the two sets of interrogatories, requests for production and requests for admission, propounded to him on October 25, 2013. The defendants contend that, when no response was received, counsel for the defendants held a conference, pursuant to Fed. R. Civ. P. 37.1, with Landry and agreed to extend the time for him to mail discovery responses until December 6, 2013. Counsel for defendants did not receive the discovery responses on or after that mailing date. In support of the motion, defendants provide copies of the interogatories, requests for production, and requests for admissions,

---

[6]The Clerk's staff was unable to confirm whether the attachment was more than the one page.

[7]Rec. Doc. Nos. 12, 15

and the letters addressed to Landry dated October 22, 2013, November 25, 2013, and December 3, 2013. In addition to an order compelling Landry to provide responses, the defendants seek attorneys' fees and costs associated with bringing the motion to compel.

The defendants second motion seeks an order to deem the Requests for Admissions to be admitted under Fed. R. Civ. P. 36(A)(3) because of Landry's failure to respond.

### III.  Standards of Review

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The discovery rules specify that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando,* 441 U.S. 153, 176 (1979).

Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). As the Fifth Circuit has repeatedly instructed, "'[a] district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse.'" *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001) (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000)).

#### A.  Motion to Compel

Under Fed. R. Civ. P. 37, when a party fails to respond to discovery, the party posing the discovery may move to compel the answer, designation, production or inspection of any materials requested so long as such discovery is relevant and otherwise discoverable. *See* Fed. R. Civ. P. 37;

*Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex.2006) ("[Rule] 37(a) [ (3)(B)(iii) and (iv) ] empowers the court to compel the production of documents ... upon motion by the party seeking discovery."). Materials and information are discoverable if they are "relevant to any party's claim or defense" or if they "appear [ ] reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b) (1). The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Export Worldwide, Ltd.*, 241 F.R.D. at 263.

In addition, when the motion to compel is granted, Fed. R. Civ. P. 37(a)(5)(A) requires the Court to order the party against whom the motion is brought to pay the movant's reasonable expenses, including attorney's fees, incurred in making the motion. *Washington v. M. Hanna Const. Inc.*, 299 F. App'x 399, 402 (5th Cir. 2008). Such payment is not to be ordered when the movant did not first attempt in good faith to obtain the discovery without court action, the opposing party's failure to respond was substantially justified, or when other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(i),(ii),(iii); *Id*., at 402.

### B. <u>Motion to Deem Requests Admitted</u>

Furthermore, Fed. R. Civ. P. 36(a)(1) states that "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Rule 36(a)(3) further provides that a matters is deemed admitted unless the party serves and answer or objection on the requesting party within 30 days after being served with the requests for admissions or after a longer term stipulated to by the parties. Thus, if a party fails to respond to a request within the time allowed, the law deems the

matter admitted and conclusively established unless the "admitting" party moves the Court, on motion of the "admitting" party, allows the withdrawal or amendment thereof. *See In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001). "This conclusive effect applies equally to those admissions made affirmatively and those established by default, even if the matters admitted relate to material facts that defeat a party's claim." (footnotes omitted) *Am. Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991).

### III. Analysis

#### A. Defendants' Motions

As outlined above, the defendants have established that the interrogatories, requests for production, and requests for admission were propounded upon Landry by certified mail on October 25, 2013.[8] At the required conference held under Fed. R. Civ. P. 37.1, counsel for defendants agreed to extend the compliance date, allowing Landry through December 6, 2013, to mail responses to the discovery requests.[9] The responses had not been received by counsel on or before December 13, 2013, when the instant motions were filed.

Generally, a *pro se* litigant is not exempt from compliance with relevant rules of procedural and substantive law. *Maloney v. State Farm Fire & Casualty, Co.*, No. 06-9183, 2008 WL 1850774, at * 2 (citing *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)). A pro se litigant who fails to comply with procedural rules has the burden of establishing excusable neglect, which is a strict standard requiring proof of more than mere ignorance. *Id*., at *2 (citing *Birl*, 660 F.2d at 593).

---

[8] Rec. Doc. No. 19-4, p. 29, Exh. B.

[9] Rec. Doc. Nos. 19-2, p. 1 and 19-4, p. 31, Exh. D.

Landry did not file an opposition to the motion as required under L.R. 7.5, and has not sought relief from the provisions of Fed. R. Civ. P. 36 or 37.

For these reasons, the defendants' are entitled to an order compelling responses from Landry. However, it is a matter of law that the requested matters are deemed admitted and conclusively established without order of the Court.

### B. Award of Reasonable Expenses, Including Attorneys' Fees

As outlined above, Rule 37(a)(5)(A) provides that if a motion to compel discovery is granted, the court must require the party whose conduct necessitated the motion to pay the movant's reasonable expenses, including attorney's fees, unless the movant failed to attempt in good faith to obtain the discovery without court intervention, the non-disclosure was substantially justified, or other circumstances make such an expense award unjust. Fed. R. Civ. P. 37(a)(5)(A).

In this case, Landry has not presented any justification for his failure to respond to the written discovery requests even after the extended time was allowed by opposing counsel. The record reflects that counsel for defendants conferred with Landry prior to filing the motion to compel, as is shown by the letter and Rule 37.1 certificate attached to the motion. The record does not demonstrate any circumstances, and Landry has not provided none, that justify his failure to comply or render the expense award unjust. Accordingly, the imposition of reasonable expenses, including attorney's fees, is warranted. Therefore,

**IT IS ORDERED** that the defendants' **Motion to Compel (Rec. Doc. No. 19)** is **GRANTED** and that, **on or before February 10, 2014**, the plaintiff, David Landry, **SHALL** serve the defendants, through counsel of record, with responses to the two sets of Interrogatories and the Request for Production.

**IT IS FURTHER ORDERED** that the defendants **SHALL** file a motion to fix expenses and attorneys' fees related to the motion to compel into the record on or before **Tuesday, February 11, 2014**, along with: (1) an affidavit attesting to each attorney's education, background, skills, and experience; (2) sufficient evidence of rates charged in similar cases by other local attorneys with similar experience, skill and reputation; and (3) the documentation required by Local Rule 54.2. The defendants **SHALL** at the time of filing notice the motion for **Wednesday, February 26, 2014**, and the motion shall be submitted on that date **without oral argument**. Any opposition to the expenses and fees requested in the motion **SHALL** be filed no later than **Tuesday, February 18, 2014**.

**IT IS FURTHER ORDERED** that the defendants' **Motion to Deem Requests for Admission Admitted (Rec. Doc. No. 20)** is **DENIED** and, under operation of law, the requested matters are deemed admitted and conclusively established without involvement of the Court.

New Orleans, Louisiana, this __16th__ day of January, 2014.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**